UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALDORA ALUMINUM &
GLASS PRODUCTS, INC.,

    Plaintiff,

v.                            CASE NO. 3:14-cv-1402-J-34JBT

POMA GLASS & SPECIALTY
WINDOWS, INC.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Damages ("Motion") (Doc. 8), Plaintiff's Response thereto (Doc. 20), and Defendant's Reply (Doc. 21). The Motion was referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 25.) For the reasons set forth herein, the undersigned respectfully recommends that the Motion be **DENIED** and that Defendant be directed to answer the Amended Complaint for Damages and

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Demand for Jury Trial ("Amended Complaint") (Doc. 5) within 14 days from the Court's order on this Report and Recommendation.

**I.     Background**

According to the Amended Complaint, Aldora Aluminum & Glass Products, Inc. ("Aldora") entered into a contract with Poma Glass & Specialty Windows, Inc. ("Poma"), effective as of September 4, 2014, to purchase Poma's assets located at Poma's Jacksonville, Florida location ("the Jacksonville Site").[2]  (Doc. 5 at 2.) Aldora was to purchase the assets for the sum of $825,000. (*Id.*)  The deadline for the closing was October 31, 2014. (*Id.* at 4.)  The parties agreed that the assets were to be sold "as is where is," that the assets were in good working order except as otherwise provided, that Poma would repair and/or replace electrical copper wire at the Jacksonville Site or arrange for its landlord to do the same, and that Poma had good and marketable title to the assets and the assets were free and clear of encumbrances. (*Id.* at 3.)  The sale of the assets was subject to several conditions, including that the parties would "individually work[] out acceptable agreements to transition the Jacksonville Site and provide a lease thereof to Aldora and to allow Poma to exit the facility with the landlord for that site prior to the Closing." (Doc. 5-1 at 3.)

---

[2] The Amended Complaint refers to the alleged contract as the "Asset Purchase Agreement." (Doc. 5 at 2.)  However, as the document at issue is titled "MEMORANDUM OF UNDERSTANDING" (Doc. 5-1 at 2), the undersigned will refer to it as the "MOU."

Poma refused to sell the assets, and failed to work out an agreement with its landlord. (Doc. 5 at 4.) Aldora alleges that Poma failed to negotiate in good faith with the landlord and refused to extend closing in order to continue negotiations with the landlord. (*Id.* at 7.) Aldora further alleges that it relied on Poma's promises and suffered pecuniary harm as a result. (*Id.* at 8.) Aldora alleges causes of action for breach of contract ("Count I"), breach of the implied covenant of good faith and fair dealing ("Count II"), and promissory estoppel ("Count III"). (*Id.* at 2–8.) Poma filed the instant Motion, arguing that the Amended Complaint should be dismissed because the sale of assets was conditioned on an unenforceable agreement to agree. (Docs. 8 & 8-1.)

**II.   Standard**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678. "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681.

### III.   Analysis

Poma argues that Count I should be dismissed because the parties left essential terms of the MOU open and subject to future negotiations, and thus the MOU is unenforceable. (Doc. 8-1 at 5–10.) Poma also argues that Count II should be dismissed because there is no breach of contract and because Count II is duplicative of Count I. (*Id.* at 10–12.) Finally, Poma argues that Count III should be dismissed because it is not available as a remedy when the parties have a written contract and because the promise on which the count is based is indefinite and unenforceable. (*Id.* at 12–14.)

#### A.   Breach of Contract

"An adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008) (citing *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. Dist. Ct. App. 2003); *Indus. Med. Publ'g*

*Co. v. Colonial Press of Miami, Inc.*, 181 So. 2d 19, 20 (Fla. Dist. Ct. App. 1965)).[3]

"The creation of a contract requires that there be mutual assent to a certain and definite proposition. Where essential terms of an agreement remain open, and subject to future negotiation, there can be no enforceable contract." *ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 2007) (quotation marks and citation omitted). "However, what constitutes an essential term of a contract will vary widely according to the nature and complexity of each transaction and must be evaluated on a case specific basis. Nevertheless, an 'agreement to agree' is unenforceable as a matter of law." *Id.* (citations omitted).

Poma argues that the MOU is conditioned on an unenforceable "agreement to agree," because the MOU provides that the sale of assets is subject to the parties working out "acceptable agreements" with the landlord for the Jacksonville Site without specifying the terms of such acceptable agreements. (Doc. 8-1 at 7–10.) As a preliminary matter, the parties seem to disagree on whether the language of the contract requires future negotiation between the parties. Poma argues that the terms of the "acceptable agreements" were subject to future negotiation between Aldora and Poma along with the landlord. (*Id.* at 8.) Aldora maintains that the parties did not agree to enter into future negotiations between

---

[3] The MOU provides that "Florida law will govern this sale excluding its conflict of laws provisions." (Doc. 5-1 at 3.) Furthermore, the parties rely on Florida law in their briefing. (*See* Docs. 8-1, 20, 21.)

5

themselves, but rather each party agreed to enter into negotiations with a third party–the landlord. (Doc. 20 at 4.)

"It is fundamental that where a contract is clear and unambiguous in its terms, the court may not give those terms any meaning beyond the plain meaning of the words contained therein." *Dows v. Nike, Inc.*, 846 So. 2d 595, 601 (Fla. Dist. Ct. App. 2003). The MOU states that the sale of assets is subject to "Poma and Aldora individually working out acceptable agreements to transition the Jacksonville Site and provide a lease thereof to Aldora and to allow Poma to exit the facility with the landlord for that site prior to the Closing." (Doc. 5-1 at 3.) The inclusion of the word "individually," along with the parties' use of the plural "agreements" rather than the singular "agreement" indicates that the parties contemplated working out separate agreements with the landlord. Nothing in the language of the MOU indicates that Aldora and Poma would further negotiate the terms of the "acceptable agreements" between themselves.[4] Thus, the undersigned recommends that the unambiguous language of the MOU provides

---

[4] The MOU also refers to the negotiations with the landlord in paragraph 12. Nothing in the language of this paragraph indicates that the parties contemplated further negotiations between themselves regarding the transition of the Jacksonville Site. (*See* Doc. 5-1 at 3 ("The parties agree to hold in confidence and not disclose any information shared between them related to this Agreement, the Jacksonville site or their negotiations with the landlord, . . . . In addition, neither party may publicly disclose the existence of this Agreement or their proposed transaction with each other or the landlord without the other party's prior written consent.").)

that Poma and Aldora would individually work out agreements with the landlord, not between themselves.[5]

In its Reply, Poma almost seems to concede this point but argues that, even if the agreement between Poma and Aldora was to "work out acceptable agreements" with a third party, because the material terms of the "acceptable agreements" were not agreed upon, the agreement is "indefinite and not a contract at all." (Doc. 21 at 3 (quotations omitted).) For example, Poma states that the MOU does not contain "(1) the term of any lease, (2) the rent for any lease, (3) when Poma must exit the facility, (4) what, if anything, Poma must pay the landlord to terminate its obligations under the existing lease, or (5) whether Poma has any remaining obligations under the lease."[6] (*Id.* at 2.)

However, "[e]ven though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974). The undersigned recommends that the language of the MOU indicates that the parties

---

[5] Although Poma does not address this, paragraph 5. d. of the MOU provides that the parties "shall negotiate and execute such further agreements and documents required to complete the Closing and sale, including without limitation, a bill of sale to transfer ownership of the Assets to Aldora free and clear of all Encumbrances." (Doc. 5-1 at 3.) However, it appears that "[r]ather than being essential, [this provision goes] towards how the agreement will be implemented going forward." *See Miles v. Nw. Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009).

[6] It appears, contrary to point (3) above, that the MOU does provide details regarding when Poma must exit the facility, as it states "Poma plans to fully vacate the Jacksonville plant no later than October 31, 2014, subject to Par. 5 (b)." (Doc. 5-1 at 3.)

7

intended the agreement to be binding on them and agreed on the essential terms of the contract. The MOU includes the assets that were to be sold, the price at which the assets were to be sold, and the timeframe for the sale. (*See* Doc. 5-1 at 2.) The MOU further provides: "This Agreement is legally binding on the parties and their successors and assigns." (*Id.* at 3.)

Furthermore, the terms that Poma points out as missing from the agreement were not within the parties' power to negotiate between themselves, but required negotiation with the landlord. Poma argues, however, that "it is even clearer that the purported contract is unenforceable because the agreement to agree involved negotiations and reaching a future agreement with an independent third party." (Doc. 8-1 at 9.) However, Florida courts have recognized similar contracts as enforceable, despite a condition that requires negotiation with and/or approval by some third party. For example, in *Windowmaster Corp. v. Jefferson Constr. Co.*, the court labeled an agreement that required the approval of third parties a "conditional agreement." It stated:

> Such an agreement is subject to the consent of the third party and is therefore a conditional agreement. Liability will arise under such a contract only when the condition has been met, that is when the third party has performed the condition which is made the predicate for liability on the contract. This general proposition may be subject to exception in particular circumstances which are not applicable here. The plaintiff's evidence, as well as his pleadings reveal that defendant's materials were never approved for use upon the job. There is no allegation or proof that the defendant failed in diligence or any other duty that might possibly have been implied from the facts.

114 So. 2d 626, 628 (Fla. Dist. Ct. App. 1959) (citations omitted).  *See also Clement v. Pensacola Builders Supply Co.*, 138 Fla. 629 (Fla. 1939) (affirming denial of motion to dismiss breach of contract claim because the defendant had waived the condition precedent of third party approval); *Hamilton v. Title Ins. Agency of Tampa, Inc.*, 338 So. 2d 569, 571–72 (Fla. Dist. Ct. App. 1976) (recognizing the enforceability of a contract requiring a potential purchaser of real estate to use "reasonable efforts and diligence" to secure permits, and holding that he had done so).

The apparent distinction argued by Poma, that an agreement is unenforceable if an "independent" third party must give approval, is not persuasive.  Both *Windowmaster* and *Hamilton* involved independent third party approval.  Poma cites no case law in support of this distinction, and the undersigned is aware of none.  Thus, the undersigned recommends that this argument be rejected.

Poma alternatively argues that if the Court determines that Paragraph 5. b. is enforceable, the breach of contract claim fails because a condition precedent to the sale, i.e. successful negotiations with the landlord, was not satisfied.  (Doc. 8-1 at 10 n.6.)  However, as Aldora argues in its Response, "[i]t is a well-established principle of law that one who prevents the happening of a condition precedent upon which his liability is made to depend, cannot avail himself of his own wrong and thereby be relieved of his responsibility to perform under the contract."  *Ward v. Branch*, 429 So. 2d 71, 74 (Fla. Dist. Ct. App. 1983).  *See also Knowles v. Henderson*, 156 Fla. 31, 35 (Fla. 1945).  Aldora alleges that Poma "scuttled the

negotiations with [its landlord] in an attempt to avoid its obligation under the [MOU] to sell the Assets to Aldora." (Doc. 5 at 6.) Accordingly, at this stage of the proceedings, the undersigned does not recommend dismissing the breach of contract claim on the basis of an unsatisfied condition precedent.

Thus, the undersigned recommends that Aldora has adequately pled a breach of contract claim, and the Motion should be denied as to Count I.[7]

### B. Implied Covenant of Good Faith and Fair Dealing

"Florida courts recognize an implied covenant of good faith and fair dealing in every contract." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000). The covenant is not an independent term of a contract but rather must relate to the performance of an express term of the contract. *Id.* "Because it is a gap-filling rule, the covenant applies only when the propriety of the conduct is not resolved

---

[7] The undersigned notes that the case law on which Poma relies is easily distinguishable. For example, several cases cited by Poma address preliminary agreements that, on their face, contemplate future agreements between the parties. *See, e.g., Dows*, 846 So. 2d at 602 (finding that a handwritten mediation agreement that provided that counsel for the parties would enter into a formalized agreement and submit it to their clients for approval "evinced the parties [sic] agreement to agree" and "the parties' intent to take further action prior to completing the binding agreement" and thus was not enforceable); *Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249, 1252 (Fla. Dist. Ct. App. 1998); *Bankers Trust Co. v. Basciano*, 960 So. 2d 773 (Fla. Dist. Ct. App. 2007). Some cases involve contract terms requiring the parties to negotiate between themselves in the future, *see John Alden Life Ins. Co. v. Benefits Mgmt. Assocs., Inc.*, 675 So. 2d 188 (Fla. Dist. Ct. App. 1996) (finding contractual provision which provided for a bonus to be negotiated by the parties in the future was an unenforceable agreement to agree), while others involve agreements missing clearly essential terms. *See Spanish Broad. Sys. of Fla., Inc. v. Alfonso*, 689 So. 2d 1092 (Fla. Dist. Ct. App. 1997) (finding that a handwritten employment agreement which did not provide the duration of employment was merely an agreement to agree); *Irby v. Mem'l Healthcare Grp., Inc.*, 901 So. 2d 305 (Fla. Dist. Ct. App. 2005).

by the terms of the contract." *Id.* "That situation ordinarily arises when: 1.) the contract is ambiguous about the permissibility of the conduct, or 2.) when the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated." *Id.*

> To allege a breach of the implied covenant, the party must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Id.* at 1319.

Poma argues that the implied covenant of good faith and fair dealing claim cannot stand because "[s]uch a claim is not an independent cause of action, but attaches instead to the performance of a specific contractual obligation" and there is no enforceable contract between Aldora and Poma. (Doc. 8-1 at 10–11.) As the undersigned recommends that Aldora has sufficiently pled an enforceable contract between the parties, this argument need not be addressed.

Poma also argues that Count II should be dismissed because it is duplicative of the breach of contract claim. (*Id.* at 11–12.) "[A] party can maintain a claim for breach of the implied duty [of good faith and fair dealing] only if it is based on allegations different than those underlying the accompanying breach of contract claim." *Shibata*, 133 F. Supp. 2d at 1319. "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply

seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.*

Aldora's breach of contract claim alleges that Poma refused to sell the assets to Aldora pursuant to the MOU. (Doc. 5 at 4.) It also alleges that Poma failed to work out an agreement with its landlord. (*Id.*) The breach of the implied covenant of good faith and fair dealing claim alleges that Poma breached the covenant by "not negotiating with its landlord in good faith to effectuate its departure from the Jacksonville Site," "not negotiating with its landlord in good faith to resolve Poma's obligations under its lease for the Jacksonville Site," and "refusing to extend closing in order to continue negotiations" with the landlord. (*Id.* at 7.) Thus, although there is some overlap between these two counts, Count II includes allegations in addition to and different from the allegations in Count I, and the undersigned recommends that the Motion be denied as to Count II.

### C. Promissory Estoppel

Poma argues that Aldora's promissory estoppel claim must be dismissed if the Court determines that there was an enforceable agreement between Aldora and Poma regarding the transition of the lease. (Doc. 8-1 at 12 n.7.) However, under Florida law, the claims for breach of contract and promissory estoppel "are alternatives for each other." *Doe v. Univision Television Grp., Inc.*, 717 So. 2d 63, 65 (Fla. Dist. Ct. App. 1998). "Until an express contract is proven, a motion to dismiss a claim for promissory estoppel . . . is premature." *Lee Mem'l Health Sys.*

12

*v. Med. Sav. Ins. Co.*, Case No. 2:04-cv-445-FtM-33DNF, 2005 WL 2291679, at *6 (M.D. Fla. Sept. 20, 2005) (quoting *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998)).  The Court has made no factual findings at this point; it has addressed only the sufficiency of allegations.  Furthermore, Federal Rule of Civil Procedure 8(d)(2) allows parties to plead in the alternative.  Thus, this argument is not appropriate at this stage of the proceedings.

Poma next argues that the promissory estoppel claim fails because the alleged "promise" on which Aldora relied, i.e. "a condition to 'work[] out acceptable agreements to transition the Jacksonville Site and provide a lease thereof to Aldora and to allow Poma to exit the facility'" is too indefinite and is unenforceable. (Doc. 8-1 at 13.) As the undersigned has recommended above, the "promise" at issue is sufficiently definite to be enforceable.  Thus, the undersigned recommends the Motion be denied as to Count III.

**IV.  Conclusion**

For the aforementioned reasons, the undersigned recommends that the Motion be denied in its entirety.

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 8**) be **DENIED** and that Defendant be directed to answer the Amended Complaint within 14 days from the Court's order on this Report and Recommendation.

**DONE AND ENTERED** at Jacksonville, Florida, on May 20, 2015.

*/s/ Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record