**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ALDORA ALUMINUM &
GLASS PRODUCTS, INC.,

           Plaintiff,

v.                                                Case No. 3:14-cv-1402-J-34JBT

POMA GLASS & SPECIALTY
WINDOWS, INC.,

           Defendant.
_____/

# O R D E R

**THIS CAUSE** is before the Court on the Report and Recommendation (Doc. 117; "Report"), entered by the Honorable Joel B. Toomey, United States Magistrate Judge, on May 16, 2016. In the Report, Judge Toomey recommends that Poma's Motion for Summary Judgment (Doc. 96; "Motion") be granted and that Poma's Motion for Leave to File Reply Briefs in Support of Motion for Summary Judgment, Daubert Motion, and Motion to Strike Specific Performance Relief (Doc. 111) be denied as unnecessary. See Report at 1–2 & n.2, 19. On May 27, 2016, Plaintiff, Aldora Aluminum & Glass Products, Inc., ("Aldora") filed Plaintiff's Objections to Report & Recommendations (Doc. 118; "Objections"). Defendant, Poma Glass & Specialty Windows, Inc., ("Poma") filed Poma's Response to Plaintiff's Objections to Report & Recommendation (Doc. 125; "Response to Objections"), on June 13, 2016. Accordingly, this matter is ripe for review.[1]

---

[1] The Court recognizes that Poma filed Poma's Motion for Oral Argument on Its Motion for Summary Judgment (Doc. 94), and Aldora similarly filed Plaintiff's Motion for Oral Argument on Objections to Report & Recommendation (Doc. 119). Upon review of the record, however, the Court concludes that oral argument would not aid in the resolution of the Motion. As such, the Court will deny the parties' motions requesting oral argument. Additionally, Poma filed Poma's Motion for Leave to File Reply Briefs in Support

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, the district court must review legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at * 1 (M.D. Fla. May 14, 2007).

Upon independent review of the file, the Court will accept and adopt the legal and factual conclusions recommended by the Magistrate Judge to the extent that the Court will grant summary judgment in favor of Poma and against Aldora and deny as unnecessary the parties' motions for leave to file replies. The Court notes that Aldora does not challenge the Report's statement of undisputed facts.[2] See generally Objections. As such, the Court will not repeat them here and instead will incorporate those facts into this Order. Rather than challenge the recitation of the undisputed facts, Aldora focuses almost entirely on the Magistrate Judge's recommendation that the Court conclude that the Memorandum of Understanding contained an essential term—transition of the lease

---

of Motion for Summary Judgment, Daubert Motion, and Motion to Strike Specific Performance Relief (Doc. 111), and Aldora filed Plaintiff's Motion for Leave to File Reply Brief in Support of Objections to Report and Recommendation (Doc. 126). The Court similarly finds that replies would not aid in the Court's resolution of the Motion. As such, the Court will deny the parties' motions requesting leave to file replies.

Moreover, because the Court concludes that Poma is entitled to summary judgment in its favor, Poma's Motion to Strike Specific Performance Relief (Doc. 93) and Poma's Motion to Exclude Testimony of Plaintiff's Expert (Doc. 95) are moot. The Court therefore will deny those motions as well.

[2] Aldora does suggest that the Magistrate Judge insufficiently considered certain evidence. See Objections at 4–6, 9–12. The Court will discuss that evidence as it arises in the discussion of Aldora's arguments.

from Poma to Aldora[3]—that was too uncertain to be enforceable. Specifically, Aldora objects to the Report on six somewhat overlapping grounds. First, Aldora argues that the Magistrate Judge "inexplicably" reversed course from the Court's earlier decision on Poma's motion to dismiss. See Objections at 1–3. Second, it contends that binding Florida case law supports the conclusion that contracts can be enforceable despite a condition requiring negotiation with a third party. See id. at 3–4. Third, Aldora asserts that the Magistrate Judge improperly found no genuine dispute as to whether the parties created an enforceable agreement. Aldora points to evidence that the parties believed they had entered into a legally binding agreement and evidence from which it asserts a jury could "easily" determine that Poma had breached the agreement. See id. at 4–6, 9–12. Fourth, it argues that whether Aldora and Poma effectively continued to negotiate indirectly with respect to transition of the lease is genuinely in dispute. See id. at 6–8. Fifth, Aldora contends that the Magistrate Judge used an incorrect legal standard in evaluating the enforceability of the Memorandum of Understanding. See id. at 10. Finally, Aldora asserts that, for all of the previously stated reasons, the Magistrate Judge also erroneously recommended entry of summary judgment in Poma's favor on Aldora's claims in Counts II and III of the Amended Complaint (Doc. 5), which allege breach of the implied covenant of good faith and fair dealing and promissory estoppel. Id. at 12.

In response to the Objections, Poma contends that the Magistrate Judge correctly determined that the Court's prior ruling on its motion to dismiss is not dispositive of the current Motion. Response to Objections at 3–5. It also argues that the Magistrate Judge

---

[3] As did the Magistrate Judge, the Court uses the term "transition" "in the sense of Poma terminating its lease and Aldora obtaining a new lease." See Report at 13 n.8.

correctly concluded that transition of the Jacksonville site from Poma to Aldora was an essential term of the Memorandum of Understanding and that the parties never agreed on the terms of that transition, leaving the Memorandum of Understanding insufficiently certain. Id. at 5–9. Poma contends that whether the parties negotiated directly with each other with respect to the lease transition is irrelevant, as is the issue of whether Poma negotiated in good faith with William "Mac" Easton, the representative for the landlord of the Jacksonville site. Id. at 9–12. Finally, it asserts that the parties' expressed intention to be bound by the Memorandum of Understanding is not determinative of whether it is an enforceable agreement. Id. at 12–13.

As to the first objection, Aldora argues that no basis exists for the Court to reverse course from its ruling on Poma's motion to dismiss because Poma raises the exact same arguments on summary judgment. Objections at 1–3. However, Poma accurately observes that a different standard governs the Court's decision at this stage of the proceedings. In reviewing Poma's motion to dismiss, the Court was restricted to the allegations of the Amended Complaint and was required to accept them as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). On summary judgment, the Court must consider the evidence presented and determine whether, viewing that evidence in the light most favorable to Aldora, a genuine dispute exists as to any material fact. See Rule 56(a), (c)(1)(A), Federal Rules of Civil Procedure ("Rule(s)"); Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir.1995).

Contrary to Aldora's assertions, the Report squarely addressed the Court's prior decision on Poma's motion to dismiss. As the Report emphasized, the Magistrate Judge's

-4-

prior recommendation was based on a determination that, according to the allegations in the Amended Complaint and the language of the Memorandum of Understanding, it appeared that the parties intended the Memorandum of Understanding to bind them and that they had agreed on all essential terms. See Report at 11 (quoting Doc. 30 at 7–8). Evidence obtained through discovery, however, revealed facts warranting a different conclusion. Specifically, two things changed based on the results of discovery. First, undisputed evidence reflects that transition of the lease from Poma to Aldora was an additional essential term of the Memorandum of Understanding. Thus, the Court's prior implicit finding that the essential terms of the Memorandum of Understanding, on its face, included only "the assets that were to be sold, the price at which the assets were to be sold, and the timeframe for the sale" is not supported by the evidence. Notably, Aldora does not dispute that transition of the lease was an essential term of the Memorandum of Understanding. See generally Objections; Doc. 107 (Aldora's response to Defendant's Motion). That the Court did not previously construe the lease transition to be an essential term meant that uncertainty as to that term would not preclude enforcement of the agreement. However, with the understanding that the transition of the lease was an essential term of the parties' agreement, its lack of clarity becomes significant. See David v. Richman, 568 So. 2d 922, 924 (Fla. 1990) ("Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract. If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." (internal quotation marks omitted)).

Second, as discussed more fully below, the undisputed facts establish that the parties left the terms of the lease transition open to future negotiations. As the Magistrate Judge observed, what once appeared to be a "condition[ ] that might easily be satisfied" in fact turned out to involve "relatively complex lease transactions." See Report at 12. Although on its face the Memorandum of Understanding appeared to contemplate entirely separate and independent agreements between Poma and the landlord, on one hand, and Aldora and the landlord, on the other, evidence of the parties' conduct in fact demonstrates unequivocally that they continued to negotiate indirectly over the terms of the lease transition. Those additional circumstances, which only became apparent upon considering the record evidence as opposed to relying on the allegations of the Amended Complaint, require a result different from that which the Court previously reached on the pleadings alone. As such, the Magistrate Judge adequately explained the reasons for his recommendation that the Court reach a different conclusion on summary judgment.

Aldora also objects to the Report on the basis that the Magistrate Judge purportedly ignored case law on which the Court previously relied that supports the proposition that a contract can be enforceable even if it includes conditions requiring negotiation with third parties. See Objections at 3–4. However, two of the cases Aldora identifies do not stand for that proposition, and the remainder are distinguishable. Aldora cites Windowmaster Corp. v. Jefferson Constr. Co., 114 So. 2d 626 (Fla. 3d DCA 1959), and Clement v. Pensacola Builders Supply Co., 189 So. 852 (Fla. 1939), but both of those cases involved conditions requiring an architect's approval of work or materials provided under a contract, see Windowmaster, 114 So. 2d at 628; Clement, 189 So. at 852–53. Neither case addresses whether a condition requiring negotiation with a third party is

permissible, so both are inapposite. The other three cases—Hamilton v. Title Ins. Agency of Tampa, Inc., 338 So. 2d 569 (Fla. 2d DCA 1976); Golden Heights Land Co. v. Norman Babel Mortg. Co., 102 So. 2d 858 (Fla. 3d DCA); and Seaside Cmty. Dev. Corp. v. Edwards, 573 So. 2d 142 (Fla. 1st DCA 1991)—did involve a condition requiring a party to the contract to reach some separate agreement with a third party. In Hamilton, the contract required the purchaser to exercise "reasonable efforts and diligence" to obtain building permits. Hamilton, 338 So. 2d at 571. In Golden Heights, a condition precedent required the seller to obtain an agreement from existing mortgage holders to subordinate them to the new proposed mortgage. Golden Heights, 102 So. 2d at 859. And, in Seaside, a condition precedent required the purchasers to obtain a financing statement. Seaside, 573 So. 2d at 146. As such, all three cases involved a condition precedent imposing a clearly defined obligation on one of the parties to the contract. Here, by contrast, the condition at issue requires both parties to reach "acceptable" agreements. As discussed more fully below, that language is not sufficiently certain to create an enforceable obligation. In short, the cases on which Aldora relies do not compel a conclusion different from the recommendation in the Report.

Aldora objects that the Magistrate Judge improperly weighed the evidence and failed to sufficiently consider evidence supporting a conclusion that the Memorandum of Understanding is an enforceable contract. Objections at 4–6, 9–12. Specifically, Aldora (1) cites evidence that the parties intended the Memorandum of Understanding to be binding and (2) argues that the condition requiring the parties to enter into "acceptable agreements" to transition the lease is sufficiently specific to enable a jury to conclude that Poma did not negotiate with the landlord in good faith. Id.

-7-

Upon review, the Court concludes that the Magistrate Judge did not improperly weigh the evidence. First, in the Report, the Magistrate Judge expressly acknowledged the evidence that the parties intended to be bound by the Memorandum of Understanding. See Report at 13–14. He nevertheless concluded, consistent with Florida law, that the uncertainty as to an essential term renders the agreement unenforceable regardless of the parties' intent. See id.; David, 568 So. 2d at 924 ("Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract. If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." (emphasis added)).

Second, whether a jury could conclude that Poma breached the implied covenant of good faith and fair dealing is not relevant to the question of whether the parties entered into an enforceable contract because it is the requirement that the parties reach "acceptable agreements" to transition the lease—not the implied duty to act in good faith—that is the portion of the Memorandum of Understanding that is insufficiently certain.[4] Aldora contends a jury could easily determine that Poma did not undertake its obligation in good faith. The problem, though, is that the Memorandum of Understanding did not sufficiently define what that obligation was. As the Magistrate Judge observed, "there is no basis to allow a jury or the Court to determine what constitutes an 'acceptable agreement.'" Report at 15. By conditioning the sale of the assets on the parties entering

---

[4] Aldora essentially contends that the Magistrate Judge glossed over evidence demonstrating Poma's bad faith and thus its breach of the Memorandum of Understanding. See Objections at 5–6, 10–12. However, the Magistrate Judge did not "give short shrift" to that evidence; instead, he concluded that such evidence is not relevant because the implied covenant of good faith and fair dealing attaches only to the extent a valid contract exists. See Report at 17.

into "acceptable" agreements to transition the lease, without any parameters defining what each party would consider acceptable, the parties left the exact requirements for such agreements unclear. But, as Aldora acknowledged, its potential lease agreement and Poma's potential termination agreement were "linked to one another" such that the terms of one directly affected the terms of the other. See Doc. 107 at 14. Despite that important connection, the Magistrate Judge found, and Aldora does not dispute, that the parties failed to agree on or discuss what parameters would constitute an acceptable lease transition for all involved. See Report at 3 (citing deposition of Leon Silverstein at 180, 225, 230–31). Without ever having agreed on how they might accomplish the transition, the parties did not reach a meeting of the minds as to an essential term, so the Memorandum of Understanding is unenforceable. See David, 568 So. 2d at 924 ("Mutual assent is an absolute condition precedent to the formation of the contract. … While a meeting of the minds may not be necessary for every term for a contract to be formed, mutual assent is certainly necessary as to an essential term.").

To form an enforceable contract, parties must "mutual[ly] assent to a certain and definite proposition." ABC Liquors, Inc. v. Centimark Corp., 967 So. 2d 1053, 1056 (Fla. 5th DCA 2007). The agreement to enter into separate but interconnected "acceptable agreements" to transition the lease from Poma to Aldora was not such a definite proposition. Although perhaps not recognized by the parties at the time they executed the Memorandum of Understanding, successful transition of the lease from Poma to Aldora required them to reach an agreement as to transition terms that would be "acceptable" to both of them together, not just to each of them independently. The parties failed to do so. The terms of the Memorandum of Understanding simply provide no basis for the Court or

-9-

a jury to determine what terms Poma would be required to pay the landlord to terminate the lease, or what Aldora should have to offer the landlord to take over the lease, in order to satisfy an obligation that the parties reach "acceptable agreements."

Aldora also objects to the Report on the basis that the Magistrate Judge ignored evidence creating a genuine dispute as to whether the parties effectively continued to negotiate the terms of the lease transition after they executed the Memorandum of Understanding. See Objections at 6–9. Aldora points to Easton's testimony that, in his view, the agreements between Aldora and the landlord, on one hand, and Poma and the landlord, on the other, were not related. Id. at 7. It also points to testimony from Chris Correnti, Poma's General Counsel and the employee of Poma who primarily handled negotiations with the landlord for early termination of the lease, discussing his perception that the parties would not negotiate directly with each other in attempting to reach agreements with the landlord. Id.

The Court finds, as an alternative to its finding that the Memorandum of Understanding was not sufficiently definite to be enforceable, that the parties indisputably continued to negotiate indirectly with each other over the terms of the lease transition after they signed the Memorandum of Understanding. Indeed, the evidence reflects that the amount Poma would have to pay to terminate the lease was directly tied to what Aldora was willing to pay to take it over and vice versa (what Aldora had to offer to achieve an acceptable lease with Easton was driven by what Poma would agree to pay to terminate its lease). As such, the Court will adopt the Magistrate Judge's recommendation that there is no genuine dispute as to that issue. That finding independently supports the Court's conclusion that the Memorandum of Understanding is unenforceable. See ABC

Liquors, 967 So. 2d at 1056 ("Where essential terms of an agreement remain open, and subject to future negotiation, there can be no enforceable contract." (internal quotation marks omitted)). On the record before the Court, the evidence of the parties' actions in negotiating their respective agreements with the landlord unequivocally demonstrates that the parties' agreements with regard to the lease were so intertwined that the parties effectively continued to negotiate with each other. Notably, Aldora's first offer proposing lease terms to the landlord expressly recognized that Aldora's requests would be tied to any agreement the landlord would make with Poma to terminate the lease early: "I figure by giving you the outline of the terms we would be looking for from the landlord[,] [y]ou can build these costs into whatever model you need to make in an early termination deal with AGC [Poma's parent company] if we get that far." Doc. 96-11 at 3. During negotiations in September 2014, Correnti told Easton that Poma was "not willing to guarantee or underwrite Aldora's lease" and suggested that Easton "firm up [the landlord's] lease requirements and terms with Aldora" with that understanding. Doc. 96-20 at 2. He further indicated that Poma was "not willing to pay additional funds to terminate the lease" in light of Poma's agreement to sell equipment to Aldora "at significantly reduced prices" and Poma's efforts to "facilitate an immediate tenant for this site and expedite the transition to them a lot sooner than would be expected." Id. After receiving Poma's offer to pay $96,658 to terminate the lease in October 2014, Easton responded that the offer was a nonstarter for the landlord, citing in part Aldora's request for a $150,000 tenant improvement allowance and six months of free rent. Doc. 96-24 at 2. Easton stated that he "spelled out Leon [Silverstein]'s ask so that you would understand how far apart we were on making this happen." Doc. 96-25 at 3. He also stated that his

demand of $500,000 was based in part on the "[d]ifference in lease income in [Poma's] remaining lease period." Id. at 2. Correnti responded in part that Poma would not "pay for improvement and free rent." Doc. 96-26 at 1. Later, Easton e-mailed Correnti a "cash flow analysis between [Poma's] current rental obligation and the draft lease we are reviewing from Aldora." Doc. 96-27 at 3. Correnti asked whether the free rent and capital improvements were already built into the proposed lease, and Easton responded that they were not, indicating that Easton intended instead to recoup those expenses through the termination agreement with Poma. Id. at 2. Finally, one of Aldora's directors contacted Poma and offered to "bridge some of [the] gap" between Poma and the landlord by "reducing some of the rent and buildout concessions." Doc. 96-32 at 2. Aldora eventually reached an agreement with Easton whereby Aldora would "pick up the difference of the delta between what … [Easton] was going to get from AGC, and the $500,000" Easton had demanded. Doc. 96-8 at 3. However, by then the deadline had passed. Doc. 96-1 at 237-38.

In short, all evidence of the parties' negotiations demonstrates that Aldora and Poma effectively continued to negotiate with each other, albeit indirectly, because the amount of Poma's obligation to terminate its lease directly corresponded to the terms to which Aldora would agree for its proposed lease. Put another way, they continued to negotiate, through Easton, how much Aldora wanted to receive in concessions and how much Poma was willing to pay to fund them. The transition depended entirely on the parties' continued negotiation over those terms.

The evidence Aldora cites is insufficient to create a genuine dispute as to whether the parties' agreements with the landlord were dependent on one another. First, Easton's

testimony that he did not "think the two [agreements] were related" is of little assistance. Whether Easton perceived that the parties continued to engage in some give-and-take is not the issue. What matters is whether Aldora and Poma effectively continued to negotiate through him. The evidence previously discussed demonstrates that they did. Indeed, regardless of whether Easton perceived the parties to be negotiating through him, he unambiguously based his own position regarding Poma's lease termination in significant part on Aldora's requested concessions. Moreover, Correnti's testimony suggests no more than that the parties did not contemplate continued direct negotiations. However, the evidence establishes that the parties continued to negotiate indirectly over what would be "acceptable" terms to accomplish transition of the lease. In light of the evidence of the actual negotiations that occurred, the personal perceptions or expectations of Easton and Correnti constitute no more than a scintilla of evidence that the parties' negotiations with the landlord were independent. "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). In other words, an issue is not a "genuine" issue for trial "if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" Baloco v. Drummond Co., Inc., 767 F.3d 1229, 1246 (11th Cir. 2014) (quotation omitted) (cert. denied, 136 S.Ct. 410 (2015). Here, there is simply no reasonable interpretation of the parties' interactions but that they continued to work through Easton to negotiate acceptable lease transition terms for Poma's early departure and Aldora's acceptance of new lease obligations.

Aldora also objects to the legal standard employed in evaluating the enforceability of the Memorandum of Understanding. Objections at 10. In doing so, Aldora acknowledges that the proper standard is whether the terms of an agreement are sufficiently certain that a jury could determine whether a party breached the agreement, and that the Magistrate Judge correctly stated that standard. Id. Nevertheless, Aldora contends that the Magistrate Judge ignored the standard in reaching his recommendation because he ignored evidence showing that Poma did not act in good faith. Id. As previously discussed, the Magistrate Judge identified the correct legal standard and applied it appropriately. The Memorandum of Understanding is not sufficiently certain to allow a jury to determine what would have constituted an "acceptable" agreement on the part of Poma to terminate the lease.

Finally, Aldora objects to the recommendation in the Report that the Court enter judgment in Poma's favor with respect to Aldora's claims for breach of the implied covenant of good faith and fair dealing and promissory estoppel. Objections at 12. Having adopted the Report's recommendation that there is no enforceable contract, Aldora's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law. See Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005) ("A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation."). Additionally, having found that the promise to enter into an "acceptable agreement" to terminate Poma's lease was too indefinite to create an enforceable contract, it also was too indefinite to form the basis of Aldora's promissory estoppel claim. See W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989). To the

extent that Aldora's claim for promissory estoppel is based on Poma's promise to sell its assets to Aldora, the Magistrate Judge correctly concluded that the sale was expressly conditioned on transition of the lease, which did not occur before the Memorandum of Understanding expired. As such, any reliance on a promise with an express condition precedent that never occurred would have been unreasonable, so enforcement of the promise through promissory estoppel is not warranted.

Upon independent review of the file and for the reasons stated in the Magistrate Judge's Report, the Court will overrule the Objections and accept and adopt the legal and factual conclusions recommended by the Magistrate Judge as supplemented in this Order. Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Objections to Report & Recommendation (Doc. 118) are **OVERRULED.**

2. The Magistrate Judge's Report and Recommendation (Doc. 117) is **ADOPTED** as the opinion of the Court as supplemented in this Order.

3. Poma's Motion for Summary Judgment (Doc. 96) is **GRANTED.**

4. Poma's Motion to Strike Specific Performance Relief (Doc. 93) and Poma's Motion to Exclude Testimony of Plaintiff's Expert (Doc. 95) are **DENIED AS MOOT.**

5. Poma's Motion for Oral Argument on Its Motion for Summary Judgment (Doc. 94), Poma's Motion for Leave to File Reply Briefs in Support of Motion for Summary Judgment, Daubert Motion, and Motion to Strike Specific Performance Relief (Doc. 111), Plaintiff's Motion for Oral Argument on

        Objections to Report & Recommendation (Doc. 119), and Plaintiff's Motion for Leave to File Reply Brief in Support of Objections to Report and Recommendation (Doc. 126) are **DENIED AS UNNECESSARY.**

6.    The Clerk of the Court is directed to enter judgment in favor of Poma and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on July 21, 2016.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

lc21
Copies to counsel of record